UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

_____
KERRY ROBINSON                    )        CIVIL ACTION
      Plaintiff                  )
                             )
v.                                )
                             )        JURY TRIAL DEMANDED
CROWLEY BUICK-OLDSMOBILE, LLC      )
      Defendant                  )
_____ )        APRIL 26, 2013

<u>COMPLAINT</u>

    1.  This is a suit brought by a consumer against Crowley Buick-Oldsmobile, LLC ("Crowley") for violations of the Truth In Lending Act ("TILA") 15 U.S.C. §§ 1601 *et seq.*, the Equal Credit Opportunity Act ("ECOA") 15 U.S.C. §§ 1691 *et seq.,* the Fair Credit Reporting Act ("FCRA") 15 U.S.C. §§ 1981 *et seq.* and pendent state law claims for violations of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §§ 42-110a *et seq.*, Article 9 of the Connecticut Uniform Commercial Code, Conn. Gen. Stat. §§ 9-101 *et seq.,*  the Connecticut Retail Installment Sales Finance Act ("RISFA"), Conn. Gen. Stat. §§ 36a-770 *et seq.,* and breach of contract.

    2.  Plaintiff, Kerry Robinson, is a natural person residing in South Windsor, Connecticut.

    3.  Crowley is a Connecticut Limited Liability Company that operates an automobile dealership in Bristol, Connecticut.

    4.  Jurisdiction in this Court is proper pursuant to 15 U.S.C. § 1640(e), 15 U.S.C. § 1691e(f), 15 U.S.C. § 1681p, 28 U.S.C. §§ 1331, 1367, 1337 and 1343(a)(3), and Fed. R. Civ. P. 18(a).

5.   This Court has jurisdiction over Crowley because it is organized under the laws of this state and regularly conducts business in this state.

6.   Venue in this Court is proper, because the Plaintiff is a resident and the acts complained of occurred in this state.

7.   Prior to September 15, 2012, Plaintiff visited Crowley for the purpose of purchasing a vehicle.

8.   That day, Plaintiff signed a Retail Installment Sales Contract (the "First RISC") for the purchase of a 2011 Nissan Rogue (the "Vehicle").

9.   Plaintiff did not take delivery of the Vehicle that day, however, because she was unable to register the Vehicle due to overdue taxes.

10.  After Plaintiff paid her outstanding taxes, she returned to Crowley and indicated that she wanted to make a cash down payment for the Vehicle instead of trading in a vehicle as was originally contemplated by the First RISC.

11.  In response, Crowley took Plaintiff's copy of the First RISC and prepared a new RISC (the "Second RISC").

12.  The Second RISC indicated that Crowley was the Creditor-Seller of the Vehicle and that Crowley was assigning its interest to JP Morgan Chase Bank, N.A. ("Chase").

13.  Plaintiff accepted delivery of the Vehicle on or around September 19, 2012 and took the Vehicle to her home.

14.  Approximately a month later, Plaintiff began to receive phone calls from Wells Fargo Bank, N.A. ("Wells Fargo").

15.  Initially, Plaintiff did not answer the phone calls, because the Second RISC indicated that Crowley intended an assignment of the contract to Chase.

16.  Eventually, Plaintiff spoke with a Wells Fargo representative who requested financial information.

17.  Plaintiff asked why Wells Fargo required her information a month after delivery of the Vehicle.

18.  The Wells Fargo representative expressed surprise that Plaintiff already possessed the Vehicle.

19.  A few days later, Plaintiff received a call from a Crowley representative who identified himself as Joe Pellegrino.  Pellegrino requested that Plaintiff return to Crowley to sign new contract documents.

20.  Pellegrino told Plaintiff that Crowley had not immediately processed the Second RISC, and, when Crowley sent the second RISC to Chase, her credit report had showed that her mortgage payment was 30 days past due.

21.  In fact, Plaintiff was experiencing difficulty with her monthly mortgage payment and had missed her October 2012 payment and was in the process of seeking a mortgage modification.

22.  At the time that Pellegrino requested that Plaintiff return to sign a new contract, Plaintiff had already submitted an application and request for a loan modification to her mortgage lender.

23.  Plaintiff returned to the dealership and executed another RISC as requested (the "Third RISC").

24. Shortly thereafter, Plaintiff was contacted by another Crowley representative who identified himself as Matt.

25. Matt told Plaintiff that her credit would be approved if she could provide proof that she was current on her mortgage by the end of that business day.

26. Plaintiff agreed to make the payment, but was unable to go to her bank until the following day, and she so informed Matt.

27. Matt initially agreed to wait until the following day, but later called Plaintiff and left a message indicating that Plaintiff had to provide proof that her mortgage was current that day or Crowley would take the Vehicle back.

28. Plaintiff returned Matt's call and told him that she wanted to speak with her attorney before taking further action, to which Matt responded that he would call the police.

29. Following this conversation, Plaintiff was contacted by Steve Miller, a representative of Crowley's corporate offices.

30. Plaintiff told Miller that, following her communications with Matt, she realized that she was not able to bring her mortgage current because that would frustrate her efforts to modify her mortgage loan.

31. Miller told Plaintiff that if she could not bring her mortgage current, she needed to return the Vehicle.

32. On or around December 20, 2012, State Marshal Arthur Cyr ("Cyr"), acting in his official capacity as a state marshal and at the direction of Crowley, arrived at Plaintiff's home and delivered a letter from Miller, a true copy of which is attached as Exhibit A.

33. Plaintiff believed that Miller was attempting to repossess the Vehicle, and she followed Cyr outside.

34. Plaintiff informed Cyr that she would be contacting her attorney, to which Cyr responded that he hoped he didn't have to come back the next day, implying that he would be back to repossess the Vehicle.

35. On or around late December 2012, Plaintiff contacted Miller and requested to make payments directly to Crowley for the Vehicle pursuant to the Third RISC.

36. Miller responded that Crowley could not accept payments from Plaintiff and demanded that Plaintiff return the Vehicle.

37. Faced with the threat of repossession, Plaintiff surrendered the Vehicle to Crowley on or around January 2, 2013.

38. Prior to repossession of the Vehicle, Crowley failed to give Plaintiff notice of the repossession in accordance with Conn. Gen. Stat §§ 42a-9-611 and 614, in violation of UCC.

39. For Crowley's violations of UCC, Plaintiff is entitled to damages in the amount of the finance charge plus ten per cent of the principal amount of the contract balance, as provided by Conn. Gen. Stat. § 42a-9-625.

40. Prior to repossession of the Vehicle, Crowley failed to give Plaintiff notice of the repossession in accordance with Conn. Gen. Stat § 36a-785, in violation of RISFA.

41. For Crowley's violations of RISFA, Plaintiff is entitled to her actual damages in an amount no less than one-fourth of the sum of all payments made under the contract in accordance with Conn Gen. Stat. § 36a-785(i).

42. At the time it made the TILA disclosures to Plaintiff, Crowley lacked information necessary to make accurate disclosures.

43. Upon information and belief, the First RISC, the Second RISC and the Third RISC failed to disclose the annual percentage rates as estimates.

44. Through its failure to disclose the APR as an estimate, Crowley violated TILA by way of Regulation Z § 226.17(c)(2) with respect to each of the three transactions.

45. Following Robinson's signature on the RISCs, a contract was formed between Crowley and Robinson and each became bound by its terms and obligated to perform in accordance with its terms.

46. Crowley willfully breached its contract with Robinson when it indicated that her credit application had not been approved and threatened to repossess the Vehicle, and when it refused to accept payments from Plaintiff.

47. For its breaches of contract, Crowley is liable to Robinson for her actual and consequential damages.

48. Crowley failed to provide Robinson with written notice of the reason(s) for any adverse action taken on her credit application, or with disclosure of the manner in which such reasons could be obtained, in violation of the ECOA.

49. Crowley is liable to Robinson for actual damages, punitive damages, plus attorney's fees and costs pursuant to ECOA § 1691e.

50. On or around November 8, 2012, Plaintiff received an adverse action notice from Ally Financial.

51. On or around November 11, 2012, Plaintiff received an adverse action notice from AmeriCredit.

52. On or around November 16, 2012, Plaintiff received an adverse action notice from Wells Fargo.

53. Plaintiff received adverse action notices from Chase on November 16, 2012, December 25, 2012 and December 28, 2012.

54. Upon information and belief, Crowley obtained and used Plaintiff's credit information to submit applications to other prospective lenders without Plaintiff's consent.

51. Crowley violated the FCRA § 1681f when it used or obtained Plaintiff's consumer report without authorization.

52. For Crowley's willful violations of the FCRA, Plaintiff is entitled to actual damages, punitive damages, plus attorney's fees and costs pursuant to 15 U.S.C. 1681n, and for Crowley's negligent violations of the FCRA, Plaintiff is entitled to actual damages and attorney's fees pursuant to 15 U.S.C. 1691*o.*

55. Through its aforementioned violations of RISFA, UCC, ECOA, FCRA and TILA and through its willful breaches of contract, Crowley engaged in unfair and/or deceptive acts in violation of CUTPA.

56. As a result of the actions of Crowley, Robinson suffered an ascertainable loss, including, but not limited to, deprivation of information to which she was legally entitled, oppression of her legal rights, temporary lost use of the Vehicle, diminished credit score due to the several inquiries by prospective lenders, and an inability to drive the Vehicle without restriction due to fear of repossession.

57. Crowley is liable to Robinson for her actual damages, plus attorneys fees and costs pursuant to Conn. Gen. Stat. § 42-110g.

58. At the time that Cyr arrived at Plaintiff's home and delivered the letter, Cyr was acting in his apparent official capacity as a State Marshal and at the direction of defendant Crowley.

59. By sending Cyr to Plaintiffs home to make an implicit threat of repossession, Crowley acted under the color of state law.

60. Crowley's action in sending Cyr to make an implicit threat of repossession subjected Plaintiff, or caused Plaintiff to be subjected to, a deprivation of her property rights.  Specifically, Plaintiff had a constitutionally protected property interest in the Vehicle, and Cyr's delivery of the letter and aforedescribed implicit threat regarding repossession of the Vehicle sought to deprive Plaintiff of her property interest in the Vehicle without due process of law.

61. Crowley's actions also deprived Plaintiff of her constitutionally protected property interest in the Vehicle in that Crowley's repossession threats caused her to believe that Crowley could take the Vehicle at any time, and caused her to restrict her use of the Vehicle.

62. Furthermore, by sending a State Marshal, Crowley sought to deprive Plaintiff of her constitutionally protected liberty interest.  Specifically, Crowley intended to intimidate Plaintiff into surrendering the Vehicle and to discourage her from exercising her legal rights.

**WHEREFORE,** Plaintiff claims: actual and consequential damages for the breach of contract claims; actual damages, statutory damages and attorney's fees and costs pursuant to 15 U.S.C. § 1640; actual damages, punitive damages and attorney's fees and costs pursuant to 15 U.S.C. §1691e; actual money damages pursuant to 15 U.S.C. § 1681n(a)(1)(A), punitive damages pursuant to 15 U.S.C. § 1681n(a)(2) and attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3); actual damages, punitive damages, and attorney's fees and costs pursuant to Conn. Gen. Stat. § 42-110g; actual and statutory damages pursuant to Conn. Gen. Stat. § 36a-785(i); statutory damages pursuant to Conn. Gen. Stat. § 42a-9-625(c)(2); compensatory damages and punitive damages pursuant to 42 U.S.C. § 1983; attorney's fees and costs pursuant to 42 U.S.C. § 1988(b) and such other further relief to which Plaintiff is, at law, or in equity and by statute, entitled to against Crowley.

**PLAINTIFF KERRY ROBINSON,**

By: /s/ Hailey R. Gallant
Daniel S. Blinn, ct02188
Hailey R. Gallant, ct29150
dblinn@consumerlawgroup.com
hgallant@consumerlawgroup.com
Consumer Law Group, LLC
35 Cold Spring Road, Suite 512
Rocky Hill, CT  06067
Tel. (860) 571-0408
Fax. (860) 571-7457